Commonwealth *v*. Lutz, Appellant.

Argued September 25, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, RHODES and HIRT, JJ.

*Eli E. Reich,* with him *Leonard H. Marks,* for appellant.

*William M. Rutter,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, *Albert E. Kabet,* and *Marshall E. Cohen,* Special Deputy Attorneys General, for appellee.

OPINION BY PARKER, J., November 22, 1939:

The defendant in this summary proceeding has appealed from a decision, after hearing, of the court below adjudging him guilty and sentencing him to pay a fine for a violation of the Act of April 6, 1911, P. L. 51, as amended by the Act of July 10, 1919, P. L. 899, and July 1, 1937, P. L. 2670 (31 PS §901 et seq.), making it unlawful to sell adulterated sausage.

It was shown by competent evidence that the defendant, a clerk in a retail store of The Streamline Markets, Inc., in Allegheny County, sold to an agent of the Department of Agriculture, on March 6, 1939, a quantity of sausage that was adulterated with coal-tar dye. By the third section of that act sausage is deemed to be adulterated if it contains "coal-tar dye, boric acid, or borates", etc. The defendant sets up as his sole defense on this appeal that the sausage act of 1911 and the pure food act of May 13, 1909, P. L. 520, as amended by Act of June 1, 1937, P. L. 1127 (31 PS §1 et seq.), are *in pari materia* and should be construed together. The Act of 1909, as amended, provides for an exemption from prosecution to a retail dealer "if the retail dealer from whom the said article of food, sample, or portion thereof, was obtained by the Department of Agriculture or its agent, can establish a guaranty, signed by the manufacturer or wholesale dealer, or jobber or distributor, residing in the United States, from whom such article of food was purchased or procured, to the effect that the same is not adulterated or misbranded within the meaning of this act designating it, unless such article of food shall have been adulterated or misbranded while in the possession of such retail dealer." The defendant undertook to bring himself within the terms of this exemption. The Act of 1911, the so-called sausage act, contained no such exemption.

Assuming, for the sake of argument alone, that the two acts are to be construed together, that method of approach is of no avail to the defendant. He undertook to show that his employer, the retail dealer, had a guaranty from the manufacturer covering the sausage purchased from the defendant, but there was ample evidence to the contrary and the court below not only found the defendant guilty but specifically found against him as to the affirmative defense so set up by him.

The evidence was sufficient to support the judgment. The agent who purchased the adulterated sausage testified that the defendant told him when he made the purchase that the sausage was a product of the North Side Packing Company and the defendant did not deny the statement alleged to have been made by him. The defendant did place in evidence a signed guaranty from Oswald and Hess Company, dated February 1, 1939, whereby that company guaranteed to Streamline Markets, Inc., "that all sausage manufactured by it and sold to you [Streamline] is not adulterated ...... within the provisions of the Act of June 1st, 1937 ...... and that the said sausage is pure food within the provisions of the Food Laws of the Commonwealth of Pennsylvania", and undertook to defend Streamline Markets in all prosecutions which might be brought against it on account of sausage purchased from the guarantor. W. T. Sweeney, supervisor of the meat departments of the Streamline Markets, testified that he did all the purchasing of sausage by his company, that he had checked the invoices of his company and as a result of such checking concluded that this sausage must have been purchased from Oswald and Hess Company, the guarantor. In view of the fact that the sausage was not kept in original packages and could not be identified, we are not surprised that the court below found that the defendant was not entitled to

the benefit of the exemption claimed. In short, the court accepted the uncontradicted testimony that the clerk in the store, the defendant, stated that the sausage purchased by the agent was a product of the North Side Packing Company and assumed such to be the fact rather than the conclusion of the purchasing agent of the defendant's employer. It would seem that the local agent of the retail dealer who was acting in the particular store where the sausage was kept and where the particular sausage with which we are concerned was purchased, would be in a better position to know from which of two or more wholesalers or manufacturers the purchase was made than the purchasing agent who made purchases for all the retail stores of Streamline Markets. Mr. Sweeney also testified that Streamline Markets purchased sausage from other persons than Oswald and Hess, but that all the sausage of the kind which forms the basis of this prosecution was at that time purchased from Oswald and Hess. As we have pointed out, Mr. Sweeney depended upon a check of invoices to support his statement that the sausage in question came from that firm. This together with the element of time left considerable room for error in Mr. Sweeney's conclusion. As the defense of a signed guaranty was an affirmative one, the burden was on defendant to show by a preponderance of evidence that he was entitled to the benefit of the alleged exemption. There was presented to the court below a question of fact which was for its determination and we cannot say that the evidence does not support the finding.

In view of our conclusions heretofore expressed, it is not necessary for us to determine whether the two acts are *in pari materia* and should be construed together. Nothing that we have said is to be taken as an expression of opinion that the two acts must be construed together. That question can be determined when it arises in a proper case.

Judgment affirmed.